FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2005 DEC -2  PM 1: 27

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

IN RE: SEARCH WARRANT

Case No.  6: 05-MC-168-ORL-31

## APPEAL OF MAGISTRATE JUDGE'S ORDER DENYING
## SEARCH WARRANT PURSUANT TO 18 U.S.C. § 2703

This memorandum is submitted in support of the government's application for a

warrant, Magistrate Case No. 05-1117-02.  The application seeks to compel a provider

of Internet services to disclose information about the use and users of its services.  The

warrant is sought pursuant to the provisions of 18 U.S.C. § 2703, significantly amended

by Section 220 of the USA PATRIOT Act, Public Law 107-56, 115 Stat. 272 (Oct. 26,

2001) (the "Act").

The legal issue presented by the application is whether a warrant seeking the

production of electronic evidence pursuant to § 2703 may be directed to a service

provider in another district.  The resolution of this issue will turn on the plain language of

the statute itself, specifically the change in language brought about by the USA

PATRIOT Act.  The legislative history of the Act establishes that Congress wanted to

authorize extra-district warrants for such evidence to quicken law enforcement's

response to criminal activity, to centralize judicial oversight in a district with jurisdiction

over that activity, and to conserve judicial and law enforcement resources.

### A.      Procedural History

On November 30, 2005, the government applied in the Middle District of Florida

for a warrant, pursuant to 18 U.S.C. § 2703, to obtain electronic data held by Yahoo,

Inc., 701 First Ave., Sunnyvale, California 94089.  After reviewing the application for the

S-1

Court lacked authority to issue a § 2703 warrant that would be executed on a business in the Northern District California. Specifically, the magistrate judge stated on its endorsed order denying the government's application:

> For the reasons stated in *In re Search Warrant*, 362 F.Supp.2d 1298 (M.D. Fla. Dec. 16, 2003), Congress has not authorized this Court to seize out-of-district property except in cases of domestic or international terrorism.

Magistrate Judge Glazebrook was the author of the opinion in *In re Search Warrant*. In Magistrate Judge Glazebrook's view, § 2703 remained limited by Federal Rule of Criminal Procedure 41(b), which restricts authority to issue extra-district search warrants to terrorism investigations. However, in the case of *In re Search Warrant*, the government appealed the Magistrate Judge's order denying its application, and United States District Court Judge G. Kendall Sharp granted the government's appeal by issuing the warrant, albeit without issuing a written opinion.

**B.    Summary of the Government's Position**

The government's application is submitted pursuant to the stored communication portion of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2701-2712. The ECPA creates statutory privacy rights for customers and subscribers of computer network service providers, and defines some of the rights and responsibilities of providers. The ECPA also defines the legal process that law enforcement must secure before it can compel a provider to disclose information about customers and the use by customers of the communications services.

The ECPA offers varying degrees of legal protection depending on the type of information involved in the request for production. Generally speaking, there are three

types of information: (1) contents of stored communications, (2) detailed transactional information, and (3) basic subscriber and session information.  The government may compel basic subscriber information with a grand jury subpoena, without judicial approval of any sort.  18 U.S.C. § 2703(c).  To obtain other transactional information and the contents of certain communications, the government may obtain a court order compelling disclosure if it can establish "specific and articulable facts" demonstrating relevance and materiality to its investigation.  18 U.S.C. § 2703(d).  To seek the contents of a wire or electronic communication in electronic storage, the government must seek a "warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation."  18 U.S.C. § 2703(a).  In this memorandum, such a warrant will be referred to as an "ECPA warrant" or "§ 2703" warrant.

        The issue before the court is whether an ECPA warrant may be issued to compel disclosure by a service provider located in another district.  The plain and unambiguous language of the statute makes "jurisdiction over the offense," and not the location of the digital information, the basis for judicial authority.  For the *issuance* of the warrant, the statute incorporates *the procedures* of the federal criminal rules.  The authority to issue the warrant, however, is created and controlled by the statute itself.

        This scheme makes sense.  From a privacy standpoint, the statute gives certain electronic and other information held by third parties the same protection afforded persons in their homes - the barrier of a judicial determination of probable cause.  From a venue standpoint, however, the statute gives authority to the court in the district where the offense is being investigated and likely prosecuted.  It would make little

sense to move this decision to the district where the internet service provider happens to locate its computers, which could be literally anywhere. It would be a waste of resources to require judges, prosecutors and agents to familiarize themselves with facts and circumstances they do not know, did not develop, and will not revisit, merely because a provider with a significant global internet presence has its server farm in a business park in their district. Not only wasteful, the practice would not advance privacy concerns at all. Congress recognized and resolved this problem in the Act.

Moreover, an ECPA warrant is not a traditional search warrant, requiring judicial supervision of forcible entries and searches of private areas within the court's vicinage. An ECPA warrant is compulsory process backed by a finding of probable cause. Most often, of course, a grand jury subpoena is used to compel disclosure of information held by third parties. It can be issued without judicial approval in any district in the country to virtually any third party in the country. There is no good reason why an ECPA warrant, with the greater protection afforded by a neutral magistrate and probable cause, ought to have a more limited reach than an *ex parte* subpoena.

In denying the Yahoo warrant, Magistrate Judge Glazebrook concluded that the statute unambiguously restricts the issuance of ECPA warrants to the judicial district in which the information is located. The government thinks the statute is unambiguously to the contrary. Assuming that the analytical separation between the government's and Magistrate Judge Glazebrook's take on the statute reflects a *bona fide* ambiguity, this Court will need to assess legislative intent.

The legislative history of the USA Patriot Act is clear. Largely for the reasons set forth above, Congress intended to allow extra-district authority in three circumstances:

4

search warrants in terrorism cases (Fed. R. Crim P. 41(b)(3)); pen register and trap and trace orders (18 U.S.C. § 3123(a)); and warrants for voice mail and electronic evidence (18 U.S.C. § 2703). In all three circumstances, Congress required only an offense-nexus as the basis for authority.

## C.    Rules of Statutory Construction

Statutory interpretation begins with the plain language of the statute. If clear and unambiguous, the plain meaning of the statute will almost always control, though it may yield in that rare circumstance when Congress clearly expresses a contrary intention. *Reves v. Ernst & Young,* 507 U.S. 170, 177 (1993)*; United States v. Turkette*, 452 U.S. 576, 580 (1981); *Glazner v. Glazner*, 347 F.3d 1212, 1214 (11th Cir. 2003); *United States v. Grigsby*, 111 F.3d 806, 816 (11th Cir. 1997); *United States v. Kirkland*, 12 F.3d 199, 202 (11th Cir. 1994); *United States v. Chandler*, 996 F.2d 1073, 1084 (11th Cir. 1993).

There are numerous other rules of construction, sometimes applied in opposition to each other. Courts should generally "look to the language and design of the statute as a whole in interpreting the language at issue." *Chandler*, 996 F.2d at 1084, citing *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991). A court may disregard even the plain language of a statute if to do otherwise "would lead to a truly absurd result." *Glazner*, 347 F.3d. 1212. An interpretation which renders a phrase a nullity is disfavored, as it offends the rule against attributing redundancy to Congress. *Kungys v. United States*, 485 U.S. 759, 778 (1988). Title and section headings can help clarify ambiguous language, but should not trump the plain language of a statute. *Raven v. Oppenheimer*

& Co., Inc., 74 F.3d 239, 242 (11th Cir. 1996).  Finally, a legislature's inclusion of

particular language in one provision and its omission in another is presumptively

deliberate, reflecting an intention that the two provisions have different import or

meaning.  *United States v. Steiger*, 318 F.3d 1039, 1050-51 (11th Cir. ), *cert. denied*,

123 S. Ct. 2120 (2003).

**D.    ECPA warrants before the USA PATRIOT Act were confined to the district where the electronic evidence was located.**

In 1986, Congress created a new chapter of the criminal code entitled, "Stored

Wire and Electronic Communications and Transactional Records Access."  18 U.S.C.

§§ 2703-2712.  The legislation was dubbed the Stored Communications Act ("SCA"),

Title II of the Electronic Communications Privacy Act ("ECPA").  The SCA established a

system of statutory privacy rights for customers of electronic communication service

providers.  One of the main substantive components to this system is set forth in §

2703, which regulates government access to stored communications.  The SCA created

a series of classifications indicating congressional judgments about what kinds of

information implicate greater or lesser privacy interests.

In general, the SCA offers greater privacy protection to categories of information

perceived by the SCA's drafters to implicate greater privacy interests. The greatest

protection is reserved for the contents of communications in electronic storage, which

may only be obtained by warrant.  18 U.S.C. § 2703(a) (2001).  However, the SCA also

gave prosecutors the option to seek such a warrant for information implicating lesser

privacy interests, such as communications held by a remote computing service, basic subscriber data, and other transactional information.[1]  18 U.S.C. § 2703(b) & (c) (2001).

Before the enactment of the USA PATRIOT Act, an ECPA warrant was to be "issued under the Federal Rules of Criminal Procedure or equivalent State warrant." 18 U.S.C. § 2703(a), (b) and (c) (each subsection using the same language for each category of information subject to compulsory process).  Then and now, Rule 41 governs the issuance and execution of search warrants.  Then, Rule 41(a) limited the court's authority to issue a warrant to search for property "within the district" at the time the warrant was sought.  At the same time, there was also no language in § 2703 which purported to allow a court to issue an ECPA warrant outside of the district.

This presented a problem.  Although internet service providers ("ISPs") were scattered around the country, industry growth and consolidation resulted in their concentration in certain areas associated with tech industries.[2]  Certainly, ISPs did not have to locate their computers anywhere near their customers, who could be scattered anywhere.  This meant that in many cases prosecutors around the country had to request other U.S. Attorney's offices to assign an uninitiated Assistant United States

---

[1]Information implicating lesser privacy interests may be compelled by an order obtained under 18 U.S.C. § 2703(d), which requires the government to demonstrate materiality and relevance based on "specific and articulable facts."  This is a lesser showing than "probable cause."  H.R. Rep. No. 827(l), 103rd Cong., 2nd Sess.  At 31-32 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3489, 3511-12.  An ECPA warrant and an order issued under § 2703(d) are different methods of compulsory process.

[2]For example, AOL is purported to have acquired approximately one-fourth of the residential internet subscriber market.  http://www.isp-planet.com/research/rankings/usa.html.  As a result, many ECPA warrants had to be processed in the Eastern District of Virginia, where AOL was located, even if there was no other case-connection to that district.

Attorney, take an uninitiated agent away from other work, and present a search warrant

application to an uninitiated magistrate judge, all at the expense of time and resources,

but without any discernible advancement of privacy or any other public policy.[3]

**E.      The plain language of the USA PATRIOT Act's amendment to ECPA vested authority to issue an ECPA warrant in the district with jurisdiction over the offense, not in the district where the digital evidence happens to be stored.**

The USA PATRIOT Act expanded judicial authority to issue extra-district

warrants in certain circumstances.  First, Rule 41 was modified to create nationwide

search warrant authority for evidence of terrorism offenses.  USA PATRIOT Act,

Section 219 (creating Rule 41(b)(3), Fed R. Crim. P.).  Accordingly, if Congress had

also wanted to limit extra-district ECPA warrants to terrorism investigations, it would not

have been necessary to amend § 2703 at all, since the limitation would have applied

through Rule 41.  However, § 2703 was changed as well.  Congress changed "*under*

*the Federal Rules of Criminal Procedure...*"to "*using the procedures described in the*

---

[3]The same problem was presented by the pen register and trap and trace statutes, 18 U.S.C. §§ 3121 to 3127.  As of September 11, 2001, a pen/trap order could only authorize the installation of a pen/trap "device within the jurisdiction of the court." 18 U.S.C. § 3123(a) (2001).  The problem could be solved by installation of a leased telephone line to the agency's local office, allowing the device to be located in the district, even if the target telephone was not.  This was permissible, though expensive. *See, e.g., United States v. Rodriguez*, 968 F.2d 130, 135 (2d. Cir. 1992) (pen register order issued in New York may authorize the device to capture calls made on a New Jersey phone); *United States v. Burford*, 755 F.Supp. 607, 610-11 (S.D.N.Y. 1991) (New York court can issue orders to monitor Maryland phone where calls are routed to New York for monitoring); *In re United States*, 846 F.Supp 1555 (S.D. Fla. 1994) (same, pen register order).  Moreover, it was not clear that the statute could be applied to internet traffic.  The term "pen register" was defined by reference to transmissions "on the telephone line."  18 U.S.C. § 3127(3) (2001).

Federal Rules of Criminal Procedure..."  USA PATRIOT Act, Section 220 (emphasis added).

Rule 41(b) is entitled, "Authority to Issue a Warrant."  Generally, that subsection does not *describe procedures for the issuance of the warrant*.  Rule 41(d) is entitled "Obtaining a Warrant," and could fairly be interpreted to *describe procedures for the issuance of the warrant*.  Rule 41(e) is entitled "Issuing the Warrant," and it clearly *describes procedures for the issuance of the warrant*.  Even this minor change to § 2703 suggests that the amendment was not intended to incorporate all of Rule 41, but only those procedural provisions regarding the warrant's issuance. Rule 41(b)(3) would not be such a provision, since it deals with judicial authority and not procedure.

The Act brought a more significant change, however.  It added new language to § 2703 which specifically authorized issuance of an ECPA warrant "by a court with jurisdiction over the offense under investigation."  This is the provision which clearly gave the ECPA warrant extra-district reach.  Any contrary interpretation would nullify this language altogether.  It would mean that Congress included entirely superfluous language and would offend the presumption against legislative redundancy.

The plain language of § 2703, thus, is inescapably unambiguous.  Any court with jurisdiction over the offense may issue an ECPA warrant for electronic evidence located anywhere in the country.  Contrary to the reasoning in *In re Search Warrant*, the fact that Rule 41(b)(3) also authorizes extra-district warrants in terrorism cases does not take away the authority established in § 2703.  By its own terms, Rule 41 cannot "modify any statute regulating search and seizure, or the issuance and execution of a search warrant in special circumstances."  Fed. R. Crim. P. 41(a)(1).

9

**F.     The legislative history of the USA PATRIOT Act makes it clear that Congress wanted to eliminate the slow, wasteful, and unnecessary requirement of restricting ECPA warrants to the district where the digital evidence was stored.**

The legislative history of the Act overwhelmingly supports this interpretation. Some of the history is a bit difficult to track. There were many versions of many provisions under consideration, and both the Administration and Congress wanted to act quickly to meet the threat of terrorism in the wake of September 11. As will be demonstrated below, sometimes the drafters of section analyses, and even members of Congress, confused different proposed sections of the Act. A careful review of the entire history of Section 220 and its related sections will reveal the unmistakable intent of Congress to authorize extra-district ECPA warrants in any criminal case.

**1.     The Administration draft proposal, September 20, 2001**

The amendment to § 2703 was first proposed by the Administration within 2 weeks of September 11. Hearing Before the House Committee on the Judiciary, 107th Cong., 1st Sess. 39 (Sept. 24, 2001), Administration's Draft Anti-Terrorism Act of 2001, Section 108, available in Westlaw, PATRIOT-LH 10 at 176 (hereinafter referred to as "the Administration proposal").[4]

---

[4]The Administration proposed several related amendments which were included in the final bill. For example, the Administration proposal expanded the pen/trap statute to explicitly cover internet communications and authorized issuance of pen/trap orders by any court "having jurisdiction over the offense." Nothing in the proposal limited this nationwide authority to terrorist cases, though the Administration's section-by-section analysis referred to such cases by way of example:

> This section authorizes courts to grant pen register/trap and trace orders that are valid anywhere in the nation, and subjects Internet communications to the same rules as telephone communications. At present, the government must apply for new pen/trap orders in every jurisdiction where an investigation is being pursued.

The amendment proposed by the Administration read in its entirety as follows:

SEC. 108.  NATIONWIDE SERVICE OF SEARCH WARRANTS FOR ELECTRONIC EVIDENCE.
Chapter 121 of title 18, United States Code, is amended-
(1) in section 2703, by striking "under the Federal Rules of Criminal Procedure" every place it appears and inserting "using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation"; and
(2) in section 2711--
(A) in paragraph (1), by striking "and";
(B) in paragraph (2), by replacing the period with ";and"; and
(C) by adding the following new paragraph at the end:
"(3) the term "court of competent jurisdiction has the meaning assigned by section 3127, and includes any federal court within that definition, without geographical limitation."

*Id.* at. 184.  The Administration's section analysis read as follows:

Section 108 - Nationwide Service of Search Warrants for Electronic Evidence.  Current law requires the government to use a search warrant to compel a provider to disclose unopened e-mail.  § 2703(a).  Because Federal Rule of Criminal Procedure 41 requires that the "property" to be obtained be "within the district" of the issuing court, however, the rule may not allow the issuance of § 2703(a) warrants for e-mail located in other districts.  Thus, for example, where an investigator in Boston is seeking electronic e-mail in the Yahoo! account of a suspected terrorist, he may need to coordinate with agents, prosecutors, and judges in the Northern District of California, none of whom have any other involvement in the investigation.  This electronic communications information can be critical in establishing relationships, motives, means, and plans of terrorists. *Moreover, it is equally relevant to cyber-incidents in which a terrorist*

_____

Hence law enforcement officers tracking a suspected terrorist must waste valuable time and resources by obtaining a duplicative order in each jurisdiction.

In greater detail, the section amends 18 U.S.C. § 3123(a) by allowing courts to grant orders that are valid "anywhere in the United States."... This amendment would increase tracing efficiency by eliminating the current need to apply for new orders each time the investigation leads to another jurisdiction. ...

*Id*. at 126.  The Administration also proposed to bring voice-mail within the stored communications provisions of ECPA, thereby treating voice mail and e-mail the same manner.  Administration proposal, Section 102, *id*. at 179.

> *motive has not (but may well be) identified. Finally, even cases that require the quickest response (kidnappings, threats, or other dangers to public safety or the economy) may rest on the evidence gathered under §2703(a).  To further public safety, this section accordingly authorizes courts with jurisdiction over investigations to compel evidence directly, without requiring the intervention of their counterparts in the districts where major Internet service providers are located.*

*Id.* at 130 (emphasis added).  The proposal and its analysis reflect the Administration's belief that the amendment would not be limited to terrorism investigations.  The analysis makes it clear that the amendment is "equally relevant to cyber-incidents" generally, before the motive for the act is known, and also specifically mentions "other dangers to public safety" which would justify the extension of authority to non-terrorism investigations.  The primary reference to terrorism cases in the section analysis is only by way of example, not limitation.  Most significantly, there is no language of limitation in the proposed amendment itself.  Although this memorandum will track this and related provisions through the legislative process, it is important to note here that the Administration's proposed Section 108 ultimately was passed as Section 220 of the final bill without any substantive change.[5]

---

[5]The redline version of the final Section 220, showing changes from the Administration's Section 108, is as follows:

**SEC. 108.  NATIONWIDE SERVICE OF SEARCH WARRANTS FOR ELECTRONIC EVIDENCE**.
(a) IN GENERAL.--Chapter 121 of title 18, United States Code, is amended--
(1) in section 2703, by striking "under the Federal Rules of Criminal Procedure" every place it appears and inserting "using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation"; and
(2) in section 2711--
(A) in paragraph (1), by striking "and";
(B) in paragraph (2), by replacing striking the period withand inserting ";and"; and
(C) by addinginserting at the end the following new paragraph at the end:

12

## 2.     H.R. 2975, the PATRIOT Act, reported October 11, 2001

The House Judiciary Committee reported on its version of the PATRIOT Act,

H.R. 2975, on October 11, 2001.  H.R. Rep. 236(I), 107th Cong., 1st Sess. (Oct 11,

2001), available on Westlaw, PATRIOT-LH 3.  It left the jurisdictional provisions of

Sections 101 (pen/trap) and 108 (ECPA amendment) unaltered, but changed Section

351 to require "jurisdiction over the offense" rather than the broader language proposed

by the Administration.  This made the jurisdictional predicate for all three sections the

same.

The Committee's analysis of Section 108 varied slightly from the

Administration's:

> Section 108.  Nationwide Service of Search Warrants for Electronic Evidence.
> Title 18 U.S.C. § 2703(a) requires a search warrant to compel service
> providers to disclose unopened e-mails. This section does not affect the
> requirement for a search warrant, but rather attempts to address the
> investigative delays caused by the cross-jurisdictional nature of the
> Internet.  Currently, Federal Rules of Criminal Procedure 41 requires that
> the "warrant" be obtained "within the district" where the property is
> located. An investigator, for example, located in Boston who is
> investigating a suspected terrorist in that city, might have to seek a
> suspect's electronic e-mail from an Internet service provider (ISP) account
> located in California. The investigator would then need to coordinate with
> agents, prosecutors and judges in the district in California where the ISP
> is located to obtain a warrant to search.  These time delays could be
> devastating to an investigation, especially where additional criminal or
> terrorist acts are planned.  Section 108 amends § 2703 to authorize the
> court with jurisdiction over the investigation to issue the warrant directly,
> without requiring the intervention of its counterpart in the district where the

---

"(3) the term 'court of competent jurisdiction' has the meaning assigned by
section 3127, and includes any federal court within that definition, without
geographical limitation."
(b) CONFORMING AMENDMENT.– Section 2703(d) of Title 18, United States
Code, is amended by striking "described in section 3127(2)(A)".

> ISP is located.  The sunset provision in section 162 would sunset this section on December 31, 2003.

*Id.* at 162.  Again, although a terrorism investigation is mentioned by way of example, there is nothing in the section analysis which indicates an intent to limit extra-district ECPA warrants to such cases.  Indeed, the analysis recognizes that the amendment is needed due to "the cross-jurisdictional nature of the Internet," and to prevent delays "where additional *criminal or terrorist* acts are planned."  *Id.* (emphasis added).

### 3.     S. 1510, the USA Act, passed by the Senate on October 11, 2001

The Senate passed the Uniting and Strengthening America (USA) Act by a vote of 96-1 on October 11, 2001.  147 Cong. Rec. S10547 (Oct. 11, 2001) at p. S10604, available on Westlaw, 2001 WL 1215640.  The Administration's proposed Section 101 (pen/trap) became Section 216; Section 108 (ECPA) became 220; and Section 351 (single-jurisdiction terrorism warrants) became 219.  *Id.* at S10605.  The Senate bill retained the Administration's jurisdictional basis for all three sections, thereby departing from the House version.  *Id.* at S100609-10.  In other words, the House version required "jurisdiction over the offense" for all three sections, but the Administration and Senate versions allowed for "related-activity" jurisdiction for search warrants in terrorism cases.

During the debate, Senator Patrick Leahy discussed Section 219:

> Search warrants.  The USA Act, in section 219, authorizes nationwide service of search warrants in terrorism investigations.  This will allow the judge who is most familiar with the developments in a fast-breaking and complex terrorism investigation to make determinations of probable cause, no matter where the property to be searched is located.  This will not only save time by avoiding having to bring up-to-speed another judge in another jurisdiction where the property is located, but also serves privacy and Fourth Amendment interests in ensuring that the most knowledgeable judge makes the determination of probable cause.

14

*Id.* at S10552.  The Senator did not address Section 220 or ECPA warrants, but

Senator John Edwards, speaking in favor of the bill, did:

> [T]he legislation brings our surveillance laws into the 21st century. Here are two of many examples.  Under current law, the FBI can use a basic search warrant to access answering machine messages, but the FBI needs a different kind of warrant to get to voice mail.  This law says the FBI can use a traditional warrant for both.  Another example: Under current law, a Federal court can authorize many electronic surveillance warrants only within the court's limited jurisdiction.  If the target of the investigation is in the judge's jurisdiction, but the subject of the warrant is technically an internet service provider located elsewhere, the warrant is no good as to that ISP.  This bill allows the court overseeing an investigation to issue valid warrants nationwide.

*Id.* at S10589.  So did Senator Jon Kyl, who also spoke in favor of the bill:

> Many of the tools in the bill are modernizations of the criminal laws, necessitated by the advent of the Internet.  While some of these tools are extremely helpful in terrorism investigations, *it makes no sense to refuse to apply these common sense changes to other crimes that are committed, like kidnapping, drug dealing, and child pornography.*  It is unwise to limit these tools to only terrorism offenses because often, at the outset of an investigation of a particular person or crime, law enforcement does not know what you are dealing with.  A credit-card fraud case or a false immigration documents case may turn out to be connected to funding or facilitating the operations of a terrorist group.  We should give law enforcement the tools it needs to have the best chance of discovering and disrupting these activities.

*Id.* at S10590 (emphasis added).  The comments of Senators Kyl and Edwards

establish that Congress understood that the justification for extra-district ECPA warrants

was technology driven and applicable to any criminal investigation, even though it was

concern for terrorist acts which had focused the attention of Congress on these

subjects.

4.    H.R. 2975, USA Act, passed October 12, 2001

When the House first passed a version of the legislation on October 12, 2001, it was modeled much more on the Senate version passed the day before, rather than the version reported by the House Judiciary Committee.  147 Cong. Rec. H6726-04 (Oct. 12, 2001), available on Westlaw, 2001 WL 1215497.  The new House bill now included the jurisdictional predicate found in the Senate version of Section 219, which in turn mirrored the Administrations's original proposal.

During the bill's debate, Representative F. James Sensenbrenner, the Chair of the Judiciary Committee, summarized Sections 219 and 220:

> Like the Committee on the Judiciary reported bill, *this new bill continues to provide for nationwide service of warrants for electronic evidence*, such as content of e-mails, *and search warrants for terrorism*.  Current rules require that a search warrant be issued from the judicial district in which the property to be searched is located.  The bill would change this to permit the prosecutor to go to the judge in the district overseeing the investigation to issue the warrant, and in the case for search warrants for terrorism offenses, in any district in which activities related to terrorism occurred.  This will save valuable time.

*Id.* at H6758 (emphasis added).  This discussion also clearly evinces an intent to treat ECPA warrants and terrorism warrants separately, while allowing either one to reach outside the district of issuance.

5.    H.R. 3162, USA PATRIOT Act, introduced October 23, 2001

On October 23, 2001, the House introduced H.R. 3162, another version of the legislation.  147 Cong. Rec. H7159-03 (Oct 23, 2001), available on Westlaw, 2001 WL 1266413.  Representative Sensenbrenner explained that bipartisan efforts "to reconcile the differences between the House and Senate bills" had been successful and the "bill

16

was the result of that process." *Id.* at H7196.  The nationwide provisions examined in

this memorandum were left substantively unaltered.  The section analysis for each read

as follows:

> Section 209: Seizure of Voice Mail Pursuant to Warrants.-Provides that
> voice mails can be accessed by the government with a court order in the
> same way e-mails currently can be accessed and authorizes nationwide
> service with a single search warrant for voice mails.  Same as
> Administration proposal.
>
> * * *
>
> Section 219: Single Jurisdiction Search Warrants for Terrorism.-Permits
> Federal judges to issue search warrants having nationwide effect for
> investigations involving terrorism.  Same as Administration proposal.
>
> Section 220: Nationwide Service of Search Warrants for Electronic
> Evidence.-Permits a single court having jurisdiction over the offense to
> issue a search warrant for e-mail that would be valid in anywhere [sic] in
> the United States.
>
> Narrower than Administration proposal in that it limits forum shopping problem by
> limiting to courts with jurisdiction over the offense.

*Id.* at H7197-8.  This analysis of Sections 219 and 220 lends further support to the

government's interpretation of the amendment.  Both the title and the text of Section

219 refer to the terror limitation, whereas no similar reference is made in the title or text

of Section 220.  Once again, if extra-district ECPA warrants were intended to be limited

to terrorism, Section 220 would not have been necessary at all.[6]

_____

[6]Another anomalous consequence of Magistrate Judge Glazebrook's
interpretation would result from the application of the Act's Sunset provision, Section
224 of the Act.  The extra-district authority in terrorism cases found in Sections 219
does not sunset, whereas the extra-district ECPA warrant authority "ceases to have
effect on December 31, 2005." *Id.* at H7166.  If Magistrate Judge Glazebrook's
interpretation were correct, the expiration of the ECPA amendment would change
nothing, since Rule 41(b)(3) would limit the ECPA warrant's reach both before and after
December 31, 2005; yet another redundant nullity.

The last sentence in the analysis for Section 220 appears to be in error, however. It asserts that the bill's version of the section is "[n]arrower than Administration proposal in that it limits forum shopping problem by limiting to courts with jurisdiction over the offense." The opinion in *In re search Warrant* concluded that this language reflected an intention to limit the authority to courts with jurisdiction over the *terrorism* offense in order to avoid forum shopping for the issuance of *terrorism* warrants in friendly but unrelated jurisdictions. *In re Search Warrant* at 1306. This conclusion is inapt for a couple of reasons. First, Magistrate Judge Glazebrook supplied the word "terrorism" in his analysis; Congress omitted it. Second, Section 220 was the same as the Administration's draft Section 108; not narrower. *See* fn. 6, *supra* (redline version showing changes in final bill from Administration's draft). The government's research has not uncovered a definitive explanation for this apparent mistake. In any event, it cannot be relied upon for the proposition espoused by *In re Search Warrant*.

6.   **H.R. 3162, the USA PATRIOT Act, Senate debate and passage, October 25, 2001**

The House passed H.R.3162 on October 24, 2001. 147 Cong. Rec. H7224 (Oct. 24, 2001). The next day, the Senate took up the bill. During the debate, Senator Leahy spoke again in favor of the bill, and made the following comment on nationwide service of search warrants generally:

> Section 220 of this bill authorizes nationwide service of search warrants in terrorism investigations. This will allow the judge who is most familiar with the developments in a fast-breaking and complex terrorism investigation to make determinations of probable cause, no matter where the property

18

> to be searched is located.  This will not only save time by avoiding having
> to bring up-to-speed another judge in another jurisdiction where the
> property is located, but also serves privacy and Fourth Amendment
> interests in ensuring that the most knowledgeable judge makes the
> determination of probable cause.

147 Cong. Rec. S10998 (Oct. 25, 2001).  If this passage looks familiar, it should.

Senator Leahy made the same remark on October 11, 2001, in support of S.1510.

*Supra*, p. 15.  The statement is nearly verbatim, the noteworthy exception being the

section number.  On October 11 the Senator correctly referred to Section 219.  On

October 25 he must have simply been mistaken when he referred to Section 220, since

his remarks obviously refer to the single-jurisdiction search authority in terrorism cases

granted by Section 219, and not the similar provision regarding nationwide warrants for

electronic evidence.  As on October 11, Senator Leahy did not specifically discuss

warrants for electronic evidence in his remarks.

The Senate's section analysis was similar to the House analysis, but it also

carried forward the erroneous claim that the bill had narrowed the Administration's

proposal:

> Sec. 220.  Nationwide service of search warrants for electronic surveillance.
> Both the House and Senate bills included this provision to amend 18 U.S.C. Sec.
> 2703(a) to authorize courts with jurisdiction over the offense to issue search
> warrants for electronic communications in electronic storage anywhere in the
> United States, without requiring the intervention of their counterparts in the
> districts where Internet service providers are located.  Narrower than
> Administration proposal in that it limits forum shopping problem by limiting to
> courts with jurisdiction over the offense.

*Id.* at S11007.  Again however, *as in all other discussions of this provision*, there is no

reference to any *limitation* to terrorism investigations.

19

Finally, the Senate also included, by unanimous consent, the Administration's

section analysis in the record, which read in pertinent part as follows:

> Mobility--Nationwide Search Warrants
>
> As communications technology now provides significant mobility to its users, who can pass from jurisdiction to jurisdiction in minutes, law enforcement and intelligence officers need that same flexibility. The bill provides for nationwide search warrants for voice mail (Sec. 209), e-mail (as long as the issuing court has jurisdiction over the offense being investigated) (Sec. 220), and in investigations involving terrorism (Sec. 219).

*Id.* at S11055. This again demonstrates that it was always the Administration's

understanding that voice and e-mail warrants (governed by 18 U.S.C. § 2703) could be

obtained in any case from a court with jurisdiction over the offense under investigation,

while extra-district search warrants for other evidence and property were confined to

terrorism investigations. More significantly, the Senate's inclusion of the

Administration's analysis, without dissent, indicates Congress shared the understanding

of the proponent of the change.

**G.    Conclusion**

In the weeks and months that followed the September 11 terrorist attacks,

Congress was unquestionably focusing its legislative lens on those tools which would

assist law enforcement in its efforts to combat terrorism. Congress recognized that the

widespread use of internet communications by criminals and terrorists alike required

that certain statutes had to be changed without limitation to terrorism investigations.

That is why, for example, Congress amended the pen/trap statute to apply to internet

traffic generally and to allow for nationwide pen/trap orders. It is also why Congress

determined that ECPA warrants should be issued by courts with jurisdiction over the offense rather than only by courts with internet servers in their district.

An interpretation that requires ECPA warrants to be obtained where the information resides is contrary to the statute's plain language, contrary to the expressed intention of Congress, contrary to common sense, would render some of the amendments to ECPA a nullity, and would continue to waste judicial and law enforcement time and resources, without any corresponding protection of privacy interests.

THEREFORE, the government respectfully requests that this Court issue the Yahoo warrant.

Respectfully submitted,

PAUL I. PEREZ
United States Attorney

By:   Cynthia A. Hawkins
Assistant United States Attorney
Florida Bar No. 305049
501 West Church Street, Suite 300
Orlando, Florida 32805
Telephone:   (407) 648-7500
Facsimile:   (407) 648-7643
E-mail:   cynthia.hawkins@usdoj.gov